IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT D. D., § | |
| § | |
| Plaintiff, § | |
| § | No. 3:21-cv-3164-C-BN |
| KILOLO KIJAKAZI, Commissioner § | |
| of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Robert D. D. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be affirmed.

**Background**

Plaintiff alleges that he is disabled due to a variety of physical and mental ailments. After his application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on February 23, 2021. *See* Dkt. No. 12-1 at 50-87. At the time of the hearing, Plaintiff was 45 years old. He is a high school graduate and has past work experience as a flooring, produce and automotive salesperson. Plaintiff has not engaged in substantial gainful activity since November 1, 2019.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. *See id.* at 20-37. Although the medical evidence established that Plaintiff

1

suffered from degenerative disc disease of the cervical spine with cervical dystonia, left shoulder degenerative joint disease, right hip degenerative joint disease, a seizure disorder, bipolar disorder, attention deficit hyperactivity disorder ("ADHD") and cannabis-induced anxiety disorder with cannabis use disorder and alcohol use disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work but could not return to his past relevant employment.

Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a mail clerk, office helper and price marker -- jobs that exist in significant numbers in the national economy.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. In a single ground for relief, Plaintiff contends that the ALJ's mental RFC finding is not supported by substantial evidence.

The undersigned concludes that the hearing decision should be affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin,* 771 F.3d 920, 923 (5th Cir.

2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff's sole argument is that the ALJ's mental RFC is not supported by substantial evidence because the ALJ did not identify any medical source opinion as the basis for it.

The Commissioner responds that the ALJ properly evaluated the medical evidence under the relevant regulations, which do not require the ALJ to base an RFC finding on a medical source opinion.

5

Relying on *Ripley v. Chater*, Plaintiff asserts the ALJ's mental RFC determination is not supported by substantial evidence because although the record contains medical evidence establishing Plaintiff's medical conditions, without reports from qualified medical experts, it does not clearly establish the effect of those conditions on Plaintiff's mental ability to work. *See* 67 F.3d 552, 557 (5th Cir. 1995). While *Ripley* remains precedential, it was decided under regulations applying to claims filed before March 27, 2017, which are no longer applicable to the Commissioner's disability determinations. *See Vasquez v. Comm'r of Social Security*, No. 7:21-cv-28-O-BP, 2022 WL 2975471, at *4 (N.D. Tex. June 30, 2022) (analyzing application of *Ripley* under the prior and revised regulations).

Plaintiff's claim was filed on November 1, 2019. *See* Dkt. No. 12-1 at 20.

For claims filed after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources." 20 C.F.R. § 404.1520c. Instead, an ALJ considers a list of factors in determining what weight, if any, to give a medical opinion. *See id.* "The most important factors in determining the persuasiveness of a medical source are whether the source's medical opinion is based on "objective medical evidence and supporting explanations" and the "consistency" of the source's opinion with the evidence from other medical and nonmedical sources in the claim." *Webster v. Kijakazi*, 19 F.4th 715, 719 (quoting 20 C.F.R. § 404.1520c).

"The determination of residual functional capacity is the sole responsibility of the ALJ" and she may "properly interpret medical evidence to determine [the

6

claimant's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). The ALJ's RFC assessment is not a medical opinion. *See Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003). Unlike medical providers and medical consultants, the ALJ considers additional evidence including the claimant's statements and testimony concerning his symptoms, his activities of daily living, the frequency and intensity of pain, the effects of medication, as well as all other medical evidence and opinion statements in the record. *See* 20 C.F.R. § 404.1529.

Here, the ALJ properly considered all medical opinions under the correct legal standard and substantial evidence supports her mental RFC finding.

Two State Agency Psychological Consultants provided opinions addressing Plaintiff's functional mental limitations. *See* Dkt. No. 12-1 at 152-55, 183-86.

On initial review, Norvin Curtis, PhD, opined that Plaintiff's depressive, bipolar and related disorders were severe. *See id.* at 153. Applying the psychiatric review technique, Dr. Curtis found Plaintiff had mild limitations under three of the four "Paragraph B criteria." Dr. Curtis found Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace; but had no limitations with adapting or managing himself. *See id.* at 153. Dr. Curtis noted that Plaintiff had trouble concentrating, memory problems, and needs to reread instructions several times. *See id.* at 154.

On reconsideration, Richard Campa, PhD, opined that Plaintiff's depressive, bipolar and related disorders were not severe. *See id.* at 186. Under the "Paragraph

7

B" criteria, Dr. Campa found that Plaintiff had mild limitations in interacting with others and concentrating, persisting, or maintaining pace but no limitations with understanding, remembering, or applying information or adapting or managing himself. *See id.* at 184.

The ALJ found the consulting psychiatrists' opinions to be mostly persuasive because they were supported by objective medical evidence, consistent with the record as a whole and the SAPCs were familiar with agency rules and regulations. *See id.* at 34. The ALJ found Dr. Curtis' opinion that Plaintiff had severe mental impairments persuasive but not his assessments of mild limitations. *See id.*

Instead, after receiving evidence at the hearing level, the ALJ found Plaintiff's mental limitations were more restrictive. She explained that due to Plaintiff's variable moods and residual symptoms relating to seizures, Plaintiff was too distractible to perform detailed or complex tasks. She then assessed moderate limitations, finding Plaintiff could understand, remember, and carry out simple tasks with short, simple instructions and make simple work-related decisions and judgments. *See id.* The ALJ also found Plaintiff could maintain attention, concentration, and pace sufficiently to perform simple work tasks because he was generally able to maintain attention and concentration during mental status examinations. *See id.* The ALJ observed that Plaintiff had problems handling stress and changes in routine, but because he was able to manage and participate in his medical care, the ALJ found he could make simple routine work-related decisions and judgments and could tolerate only occasional workplace change. *See id.* The ALJ

8

acknowledged evidence that Plaintiff did not socialize but found he could have occasional interaction with the public because he was cooperative with medical providers, got along with family, friends, and neighbors, and shopped in stores. *See id.*

The ALJ also considered the functional assessment of a treating Advanced Practice Nurse, who opined Plaintiff's mental limitations would cause him to miss three days of work per month, which would make him incapable of sustaining the work attendance required to perform competitive employment. *See id.* at 34; *see also* Dkt. No. 12-5 at 811 (nurse's opinion); Dkt. No. 12-1 at 84 (vocational expert's testimony). The ALJ explained that the nurse's opinion was not persuasive because there was no explanation or description to support it. The ALJ also found it was inconsistent with and not supported by Plaintiff's reports of "2" out of "4" on loss of ability, treatment notes reflecting Plaintiff was stable, and relatively normal mental exam findings. *See id.* at 34.

The ALJ articulated the reasons for her persuasiveness findings, incorporated Dr. Curtis' finding that Plaintiff had severe mental limitations and imposed more restrictive limitations than those found by the SAPCs. Although the ALJ's mental RFC finding does not mirror the SAPC's medical opinions, "it cannot be said that [the ALJ's] decision was not based on substantial evidence." *Webster*, 19 F. 4th at 71; *see also Carson v. Comm'r of Social Security*, Civil Action 6:21cv12, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022) ("There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion."); *Collins v. Comm'r, SSA*, 4:20-CV-00769-

9

SDJ-CAN, 2022 WL 4494122, at *5 (E.D. Tex. Aug. 30, 2022) (holding RFC finding was supported by substantial evidence where the ALJ fully reviewed the record, recognized claimant had more limitations than assessed by non-examining consultants, and accommodated these additional limitations in the RFC finding); *Myers v. Saul*, SA-20-CV-00445-XR, 2021 WL 4925993, at *8 (W.D. Tex. Sept. 3, 2021) ("[T]the ALJ is not required to have a medical opinion that matches his RFC determination.")

Plaintiff does not otherwise challenge the ALJ's mental RFC finding, but it is also supported by the objective medical evidence, Plaintiff's activities of daily living, and prior administrative medical findings.

The ALJ noted Plaintiff's "mental status examinations have mostly been unremarkable with normal behavior, judgment, logical thought content, intact memory, fair attention and concentration, and no signs of psychotic behavior." Dkt. No. 12-1 at 24. She also noted that on updated mental status exams, Plaintiff "was cooperative with treating providers throughout the record," his though content was logical, his thought associations were organized, and his insight was fair. *See id*. at 19.

The ALJ observed that Plaintiff had not required inpatient psychiatric hospitalization during the relevant period, and although he sought some outpatient mental health treatment, the record did not reflect a longitudinal treatment history. *See id*. at 24.

Plaintiff reported he could prepare simple meals twice a week, prepare juices three times a day, walk outside, sweep occasionally, ride in a car, shops in stores, manage his finances, spend time with his roommate, go out alone, and had his driver's license reinstated five or six years ago. *See id.*

And the ALJ stated that Plaintiff's applications filed in 2013 and 2018 were both denied, and she was not reopening them under the doctrine of res judicata. *See id.* at 20.

The undersigned finds the ALJ applied the correct legal standards and reached a mental RFC finding supported by substantial evidence.

## Recommendation

The hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 31, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE